IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. 04-cv-02412-MSK-BNB

LEVON DAVIS, a minor by and through next friends,
LANCE DAVIS, and
REBECCA DAVIS,

    Plaintiff,

v.

MESA COUNTY VALLEY SCHOOL DISTRICT NO. 51, and
J. TIM MILLS, in his individual capacity only,

    Defendants.

_____

**OPINION AND ORDER GRANTING MOTION TO DISMISS**
_____

    **THIS MATTER** comes before the Court pursuant to the Defendants' Motion to Dismiss

**(# 3)**, the Plaintiff's response **(# 6)**, and the Defendants' reply **(# 16)**.

**BACKGROUND**

    The following facts are derived from the Complaint **(# 1)**, and, for purposes of this

motion, are assumed to be true.

    Mr. Davis is a student in the Mesa County Valley School District, and until the events at

issue here, attended Palisade High School. On November 11, 2002, Mr. Davis was involved in an

incident in an empty classroom with two females students that began as playful wrestling,

1

evolved into sexually-suggestive horseplay by all involved, culminated in Mr. Davis– with what he believed to be the student's implied consent– touching the breast of one of the students, and ended promptly when the student asked him to stop. Although Mr. Davis believed that all of the circumstances of the incident were consensual, on December 30, 2002, Mr. Davis was charged with Unlawful Sexual Contact in Colorado District Court, apparently initiated by complaints by both female students.

At the same time, the School District brought charges of violating the District's Code of Student Conduct, accusing Mr. Davis of: (i) "committing an act which if committed by an adult would be sexual assault as defined by state law"; and (ii) "behaving in a way which is detrimental to the welfare, safety or morals of other students or school personnel." On January 9, 2003, the District conducted an evidentiary hearing before a Hearing Officer, at which Mr. Davis and both victims appeared and testified. Mr. Davis was represented by counsel at this hearing. Although the female students gave what the Complaint characterizes as "obviously conflicting and untrue statements," the Hearing Officer found that Mr. Davis had violated both provisions of the Code of Student Conduct. Based on that finding, Defendant Mills, as Superintendent, directed that Mr. Davis be expelled from the school for one year for having engaged in sexual assault.

On June 13, 1003, the criminal charges against Mr. Davis were dismissed on the grounds that the District Attorney had doubts as to the veracity of all three individuals involved. Mr.

Davis contends that this dismissal "rendered it impossible for the School District to [thereafter] claim that" he had committed sexual assault.

On July 18, 2003, Mr. Davis's counsel wrote to the Defendants, requesting that Mr. Davis be reinstated at Palisade High School. However, upon consultation with their own counsel, the Defendants responded that "It has never been District policy or practice to change or re-open final expulsion decisions based upon the outcome of subsequent criminal or private investigations, or upon actions by law enforcement authorities to commence, drop or prosecute criminal charges." Thus, Mr. Davis's expulsion remained in effect until he returned to Palisade High School in January 2004, and his student records continue to reflect the finding that he had engaged in sexual assault.

Mr. Davis then commenced this action, alleging eight causes of action: (i) gender discrimination in violation of Title IX, 20 U.S.C. § 1681 *et seq.*, in that Mr. Davis "was qualified for readmission into Palisade High School" and to have his records expunged, yet the Defendants refused to do so while simultaneously failing to discipline the two female students; (ii) a claim against Defendant Mills for violation of Mr. Davis's rights under the Equal Protection clause pursuant to 42 U.S.C. § 1983, in that Defendant Mills' enforcement of the District's policy regarding re-examination of expulsion determinations violates Mr. Davis's rights; (iii) a claim against the Defendant School District for violation of Mr. Davis's Equal Protection rights under § 1983, insofar as the District's policy regarding re-examination of expulsion determinations is

3

"unconstitutionally broad, arbitrary, and irrational"; (iv) a Substantive Due Process claim against Defendant Mills under § 1983, in that the punishment[1] meted out by Defendant Mills was so "excessive [and] shocking-to-the-conscience" as to violate Mr. Davis's liberty interests; (v) a Substantive Due Process claim against the Defendant School District under § 1983, insofar as its policy regarding re-examination of expulsion determinations is "unconstitutionally broad, arbitrary, and irrational"; (vi) a claim that repeats the substantive allegations of claim four verbatim, except that the heading of the claim references "psychological abuse of a Public School student"; (vii) a claim that repeats the substantive allegations of claim five verbatim, except that the heading of the claim references "psychological abuse of a Public School student"; and (viii) a state-law claim of outrageous conduct against Defendant Mills.

The Defendants then filed the instant Motion to Dismiss, alleging that Mr. Davis's allegations fail to state a cognizable claim under any of the asserted theories.

## JURISDICTION

The Court has subject-matter jurisdiction over Mr. Davis's Title IX and § 1983 claims pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Mr. Davis's state-law claim pursuant to 28 U.S.C. § 1367.

## ANALYSIS

---

[1] As discussed herein, upon reviewing the Complaint the Court determines that by "punishment," Mr. Davis is referring to the Defendants' refusal to re-consider his expulsion following dismissal of the criminal charges.

Before proceeding to the analysis, the Court finds it helpful to articulate what is not at issue in this action. Interpreting the Complaint in the light most favorable to Mr. Davis, the Court notes that the Complaint does not appear to challenge the procedural fairness of the January 2003 expulsion hearing, nor the reasonableness of the substantive finding against Mr. Davis made at the conclusion of that hearing. Rather, the sole focus of Mr. Davis' Complaint is the refusal by the Defendants to revisit the validity of that finding in light of the subsequent dismissal of the criminal charges. The Court also observes that Mr. Davis' Complaint acknowledges that the Defendants have asserted that their refusal to reconsider is based upon a policy of the School District of not reconsidering disciplinary proceedings in such circumstances ("the non-reconsideration policy"), but nothing in the Complaint appears to dispute that such a policy exists. Accordingly, the Court understands Mr. Davis' claims to be limited to asserting that the Defendants have applied the non-reconsideration policy in a discriminatory fashion against him and that such policy otherwise violates his Constitutional rights.

**A.  Standard of review**

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim

"unless it appears beyond doubt that Mr. Davis can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court must limit its review to the four corners of the Complaint, but may also consider documents attached to the Complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the Complaint and central to Mr. Davis's claim, so long as the authenticity of such documents is undisputed. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

### B. Title IX claim

Claims of gender discrimination under Title IX are analyzed under a similar framework to that used to evaluate Title VII discrimination claims. *Gossett v. Oklahoma*, 245 F.3d 1172, 1176 (10th Cir. 2001). Thus, to state a *prima facie* claim under Title IX, Mr. Davis must allege facts that demonstrate: (i) he is a member of a protected class; (ii) he was qualified for the relief he sought, *i.e.* recision of his expulsion and expungement of his record; (iii) that he was denied that relief; and (iv) that the denial occurred in circumstances giving rise to an inference of discrimination. *Id.* For purposes of a motion to dismiss, Mr. Davis's pleading of a *prima facie* case is sufficient, as that gives rise to a presumption of discrimination that the Defendants bear the burden of rebutting. *Id.* The Defendants do not dispute that Mr. Davis has alleged the first

and third elements: that is a member of a protected class, and that he was denied the relief he requested. However, they contend that Mr. Davis has not alleged facts regarding the second and fourth elements: that he was qualified for recision of the expulsion and expungement of his record, and that the denial of that relief was related to Mr. Davis's sex.

Paragraph 40 of the Complaint alleges that Mr. Davis was "qualified to have his expulsion . . . vacated." However, the allegation appears in stark contrast to another, more specific allegation in the Complaint, namely, that the Defendants advised Mr. Davis that the District's policy is to <u>never</u> reopen expulsion determinations based on disposition of criminal charges. Logically, if the District never re-evaluates an expulsion decision under these circumstances, a student aggrieved by such a decision can never be "qualified" to obtain such re-evaluation. Notably, the Complaint does not allege that the District's statement as to the effect of its policy was inaccurate, that no such policy exists, or that there are known circumstances in which the District has deviated from that policy. More importantly, the Complaint's allegation that Mr. Davis was "qualified" for reconsideration of his punishment is purely conclusory; the allegation gives no indication of what standards necessarily "qualify" a student for such reconsideration, nor describe how Mr. Davis met those standards.[2]

---

[2] The Court infers from Mr. Davis's Complaint that he alleges that the only necessary "qualification" to permit reconsideration of his expulsion is the fact that the criminal charges filed against him because of the incident were dismissed. Of course, this allegation is also inconsistent with the undisputed District policy, which states that disposition of criminal charges do not give rise to reconsideration.

In other words, the Court is faced with a Complaint that is internally inconsistent. In such circumstances, it is appropriate for the Court to reject the conclusory assertion in favor of the factual. *See e.g.* Wright & Miller, Federal Practice & Procedure, § 1357 ("the court will not accept conclusory allegations concerning the legal effect of the events the plaintiff has set out if these allegations do not reasonably follow from the pleader's description of what happened, or if these allegations are contradicted by the description itself"). Once the Court discards Mr. Davis's unsupported characterization of himself as being "qualified" to have his expulsion reconsidered, the only relevant allegation in the Complaint is that the District does not, as a matter of policy, engage in such reconsideration. Thus, Mr. Davis has failed to plead facts sufficient to establish a *prima facie* case under Title IX.[3]

### C. Equal Protection claims

Mr. Davis brings two separate Equal Protection claims, one against Defendant Mills and one against the District, itself. Again, it is important to note that the alleged violation arises not from the initial decision to expel Mr. Davis, but from "Defendant Mills [following] the District Policy in refusing to 'lift, vacate or alter the expulsion order.'" *Complaint*, ¶ 50. However, the particular nature of these claims are somewhat unclear.

---

[3]The Court need not address the alternative issue of whether Mr. Davis had pled facts giving rise to an inference of discrimination. In any event, the arguments raised by Mr. Davis on this point– that no punishment was meted out to the "similarly situated" female students involved in the incident– is rejected in the Equal Protection analysis *infra*. Thus, Mr. Davis' failure to plead facts giving rise to an inference of discrimination is an independent basis for dismissing his Title IX claim.

With regard to the claim against Defendant Mills, Mr. Davis appears to assert that although the non-reconsideration policy nominally compels Defendant Mills to reject Mr. Davis's request to modify his expulsion, the policy cannot be applied because the District "had a duty to abide by the law and not violate students' constitutional rights as opposed to enforcing an unlawful District policy." *Id.*  The Court construes this as an "as-applied" challenge to the District's policy on Equal Protection grounds.  By contrast, the claim against the District asserts that the policy is "unconstitutionally broad, arbitrary, and irrational." This appears to be a facial challenge to the policy as violating the Equal Protection clause.

The core purpose of the Equal Protection clause is that the government must treat similarly-situated individuals similarly. *Barney v. Pulsipher*, 134 F.3d 1299, 1312 (10th Cir. 1998).  Thus, with regard to the claim of facial unconstitutionality against the District, the question is whether Mr. Davis has alleged facts that indicate that, on its face, the non-reconsideration policy treats similarly-situated persons differently.  No such facts are pled.  On its face, the policy is neutral in its application: it states that where students have been expelled, the District will not revisit the expulsion decision notwithstanding the subsequent disposition of criminal charges relating to the conduct that caused the suspension.  The policy does not, by its terms, apply only to a particular group of students, male students, white students, or to any other identifiable sub-class of expelled students.  Thus, there are no facts in the Complaint

sufficient to allege that the policy is facially violative of the Equal Protection clause, and the third cause of action fails to state a claim.

With regard to the "as-applied" challenge, Mr. Davis must allege facts that show that the District has applied its policy to him in a way that it has not done with similarly-situated individuals. In his response to the motion, Mr. Davis alleges that he is similarly-situated to the two female students involved in the incident, and that they were treated differently insofar as they were not disciplined. To state this proposition is to expose the fallacy upon which this cause of action is predicated. By its terms, Mr. Davis's Equal Protection claim against Defendant Mills challenges the Defendants' application of the policy prohibiting reconsideration of expulsion decisions. In this regard, Mr. Davis would be similarly situated to other students who had been expelled, but not to the female students who were not. Although Mr. Davis may perceive unfairness in that he was expelled while the female students participating in the incident were not punished, the Court emphasizes that his Equal Protection claim <u>does not</u> purport to challenge the initial decision to punish him; only the decision not to <u>reconsider</u> that punishment is at issue. Because the Complaint does not allege that there were similarly situated students–students who had been expelled– who were treated differently than Mr. Davis in the application of the non-reconsideration policy, he fails to state an "as-applied" Equal Protection claim.

**D. Substantive Due Process claims**

Mr. Davis's fourth and fifth causes of action allege violations of Substantive Due Process, again in what appears to be "as-applied" and facial challenges. The nature of these claims are also somewhat unclear. The fourth cause of action refers to "Defendant Mills' [ ] actions," an ambiguous reference given that Defendant Mills, as Superintendent, both issued the order expelling Mr. Davis, *see Complaint,* ¶ 28, and determined not to reconsider that expulsion upon the dropping of criminal charges, *Complaint*, ¶ 36. However, the allegations in the fifth cause of action appear to resolve the ambiguity. There, Mr. Davis makes clear that the fourth cause of action involves the unconstitutional application of the "District Policy," and specifically refers the reader to paragraph 36, in which the non-reconsideration policy is described. *See Complaint*, ¶ 68. Thus, the Court understands Mr. Davis to be limiting his claims in the fourth and fifth causes of action, as he has in his other claims, to the District's non-reconsideration policy, not to the decision to expel him in the first instance.

The doctrine of Substantive Due Process protects individuals from governmental deprivations of liberty or property that are "arbitrary, capricious, or without a rational basis." *Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 528 (10th Cir. 1998). Assuming, for purposes of this motion, that Mr. Davis's ability to attend Palisade High School is a protectible liberty or property interest, the Substantive Due Process analysis requires him to plead facts that show that the Defendants' conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8

(1998); *Ruiz v. McDonnell*, 299 F.3d 1173, 1183-84 (10th Cir.2002).  Thus, Mr. Davis's facial challenge to the District's non-reconsideration policy must allege facts to show that the policy, on its face, is so arbitrary as to be conscience-shocking; for his "as-applied" challenge, he must allege facts to indicate that Defendant Mills' conduct in refusing to reconsider the expulsion arises to that level of arbitrariness.

With regard to the facial challenge, the Court finds that Mr. Davis has not alleged facts to indicate that the non-reconsideration policy is conscience-shocking on its face.  To the contrary, the Court believes that the District's policy reasonably promotes laudable goals of bringing finality and certainty to matters involving student discipline.  As the Defendants correctly note in their motion, the crux of this case is Mr. Davis's belief that the dismissal of the criminal charges against him effectively serves to exonerate him of disciplinary violations charged by the District.  In rejecting that argument, the Court notes that Mr. Davis does not dispute the fundamental procedural or substantive fairness of the District's disciplinary hearing.  In other words, Mr. Davis' argument is, in essence, that the School District should reconsider its own findings of his guilt– reached after a full and fair evidentiary hearing– simply because the District Attorney elected not to prosecute Mr. Davis criminally for the same conduct.

The District can hardly be faulted for deciding not to condition its own discipline on the unpredictable outcome of criminal prosecution.  The vagaries of the criminal law-- the necessary conservation of precious prosecutorial resources, the need for plea bargaining, the government's

high burden of proof, and the incalculable number of factors that enter into a prosecutor's decision to bring, pursue, and drop criminal charges-- introduce great uncertainty of outcome. The School District can either accept this uncertainty, and the concomitant disruption to its disciplinary scheme and student expectations that might result when criminal charges against students are modified or dropped by a busy or overly-cautious prosecutor, or it can keep its disciplinary scheme separated from the criminal process thereby enjoying certainty and finality in its disciplinary decisions but with the risk that some will perceive an inconsistency between the School District's disciplinary process and the criminal process.  In short, unless the District's charges require, as an essential element, a finding that the student has engaged in criminal activity,[4] there is nothing inherently arbitrary or conscience-shocking in a policy that adjudicates alleged student misconduct without regard to the outcome of the criminal process.[5]  Accordingly,

---

[4]The Complaint alleges that Mr. Davis was convicted by the Hearing Officer of two violations of the Code of Student Conduct: (i) comitting a sexual assault that would be illegal under state law, and (ii) behaving detrimentally to the welfare and morals of other students. Arguably, the former charge might require proof similar to that required for a criminal act but the latter charge clearly does not.  Thus the outcome of any criminal proceedings would be irrelevant to the second charge.

[5]Although laypeople understandably can be confused as to how Mr. Davis can be considered by the school to be guilty of sexual assault and yet not be prosecuted in the criminal system, the dropping of charges against Mr. Davis does not necessarily mean that he did not commit a sexual assault; it merely means that the District Attorney chose not to pursue the case. This decision does not impugn the determination made at the District's independent disciplinary hearing.

Mr. Davis has failed to allege facts that would suggest that the District's non-reconsideration policy is facially violative of Substantive Due Process.

For similar reasons, the Court finds that, on the facts alleged, Mr. Davis cannot prove a Substantive Due Process violation based on Defendant Mills' application of the policy. As described in the Complaint, the non-reconsideration policy does not entail the exercise of discretion by Defendant Mills or anyone else. Rather, it flatly states that reconsideration of an existing disciplinary finding is not available based on the subsequent outcome of criminal charges. Thus, the Court cannot say that Defendant Mills somehow abused some discretionary power he had in applying the policy, as the Complaint indicates he had none to abuse. The Complaint concedes that Defendant Mills refused Mr. Davis' request for reconsideration based on the fact that such relief was expressly barred by the District's policy; the Complaint does not allege that Defendant Mills misinterpreted or misapplied the express terms of the policy.

For the reasons stated above, there are no facts suggesting that the District's decision to apply its standing policy not to reconsider a prior disciplinary ruling despite the dismissal of criminal charges was arbitrary. Although Mr. Davis may perceive the decision as unfair, the facts presented in the Complaint do not establish a Substantive Due Process claim.

### E. Remaining claims

In his response, Mr. Davis agrees to withdraw the sixth and seventh causes of action, and thus, the Court deems those claims withdrawn.

Because all of Mr. Davis' claims based on federal law are subject to dismissal, the Court need not consider that portion of the Defendants' motion that challenges Mr. Davis' state-law outrageous conduct claim, as there is no longer a basis for exercising supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3). In any event, based on the foregoing analysis, the Court has grave doubts that the acts alleged in the Complaint– namely, the refusal to re-open a fully-litigated case of student misconduct in light of the dismissal of related criminal charges– rises to the level of being sufficiently actionable as a matter of law. *See Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665-66 (Colo. 1999) (encouraging plaintiff to participate in illegal conspiracy and thereafter terminating him as scapegoat not sufficiently outrageous).

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss **(# 3)** is **GRANTED**. The Complaint **(# 1)** is **DISMISSED**[6] in its entirety for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Dated this 26th day of August, 2005.

---

[6] Leave to amend a Complaint to cure pleading deficiencies is a common alternative to dismissal under Rule 12(b)(6). However, here, the primary basis for dismissal of Mr. Davis's Complaint is not because it fails to allege facts on a certain element, but because the cited claims are not viable as a matter of law in the face of the Complaint's own factual averments. Nevertheless, the Court can conceive of situations in which, after a thorough consideration of Fed. R. Civ. P. 11(b)(3), Mr. Davis might be able to allege new or additional facts that shift the perspective of the case sufficiently to survive dismissal. Accordingly, the Court dismisses the Complaint without prejudice to a newly-filed action with properly-supported, legally-viable claims.

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge